# Exhibit 1

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

| | FOR COURT USE ONLY<br>*(SOLO PARA USO DE LA CORTE)* |
|---|---|

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

EOCELL, INC., a California corporation; EOCELL, LTD., a Hong Kong corporation; DRAGON GROUP INTERNATIONAL, LTD, a Singapore corporation; MICHAEL LOH, an individual; and DOES 1-20

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

MICHAEL PAK, an individual, suing individually and derivatively on behalf of EOCELL, LTD., a Hong Kong corporation; SPUTNIK ENERGY, LTD, a British Virgin Islands limited company, suing individually and derivatively on behalf of EOCELL, LTD., a Hong Kong corporation

**Electronically FILED**
by Superior Court of California, County of San Mateo
ON  **7/2/2020**
By **/s/ Una Finau**
     Deputy Clerk

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is:<br>*(El nombre y dirección de la corte es):* | CASE NUMBER:<br>*(Número del Caso):*  **20-CIV-02725** |
|---|---|

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN MATEO, 400 County Center, Redwood City, CA 94063

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Yosef Peretz    (Bar #209288)
Peretz & Associates, 22 Battery Street, Suite 200,
San Francisco, CA 94111

Fax No.: (559) 421-9380
Phone No.: (855) 273-3797

| DATE: July 2, 2020<br>*(Fecha)* 7/2/2020 | Neal I. Taniguchi | Clerk, by<br>*(Secretario)* /s/ Unaloto Finau | , Deputy<br>*(Adjunto)* |
|---|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☒ on behalf of *(specify):* EO CELL, INC. ; AGENT FOR SERVICE: PATRICK GIRAY

under: ☒ CCP 416.10 (corporation)       ☐ CCP 416.60 (minor)
      ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
      ☐ CCP 416.40 (association or partnership) ☒ CCP 416.90 (authorized person)
      ☐ other *(specify):*
4. ☒ by personal delivery on *(date)*: 7/16/2020

[SEAL]

**Page 1 of 1**

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov
LexisNexis® Automated California Judicial Council Forms

1  Yosef Peretz (SBN 209288)
   yperetz@peretzlaw.com
2  David Garibaldi (SBN 313641)
   dgaribaldi@peretzlaw.com
3  PERETZ & ASSOCIATES
   22 Battery Street, Suite 202
4  San Francisco, CA 94111
   Telephone: 415.732.3777
5  Facsimile: 415.732.3791

**Electronically**
**FILED**
by Superior Court of California, County of San Mateo
ON          7/2/2020
By_____ **/s/ Una Finau**
                **Deputy Clerk**

6  Attorneys for Plaintiff MICHAEL PAK and SPUTNIK ENERGY, LTD

7         **SUPERIOR COURT OF THE STATE OF CALIFORNIA**
8              **IN AND FOR THE COUNTY OF SAN MATEO**

9                                              Case No.  20-CIV-02725

10 MICHAEL PAK, an individual, suing
   individually and derivatively on behalf of     **COMPLAINT AND DEMAND FOR JURY**
11 EOCELL, LTD, a Hong Kong corporation;          **TRIAL**
   SPUTNIK ENERGY, LTD, a British Virgin
12 Islands limited company, suing individually
   and derivatively on behalf of EOCELL,       1.  Breach of Contract;
13 LTD, a Hong Kong corporation,                2.  Breach of the Duty of Good Faith and Fair
                                                    Dealing;
14                                              3.  Failure to Pay Wages Due and Owing in
                                                    Violation of Labor Code §§ 200, 201, 202
15             Plaintiffs,                           & 218;
                                                4.  Penalties for Failure to Pay Earned Wages
16                                                  Upon Discharge in Violation of Labor Code
   v.                                               § 203;
17                                              5.  Failure to Furnish Timely and Accurate
18 EOCELL, INC., a California corporation;          Wage Statements in Violation of Labor
   EOCELL, LTD, a Hong Kong corporation;           Code § 226;
19 DRAGON GROUP INTERNATIONAL,                  6.  Breach of Fiduciary Duty;
   LTD, a Singapore corporation; MICHAEL       7.  Breach of the Duty of Care;
20 LOH, an individual; and DOES 1-20,          8.  Breach of the Duty of Loyalty; and
                                                9.  Unlawful, Unfair, and/or Fraudulent
21             Defendants.                          Business Practices in Violation of Business
22                                                 and Professions Code §§ 17200, et seq.;

23        Plaintiffs  MICHAEL  PAK  ("Pak")  and  SPUTNIK  ENERGY,  LTD  ("Sputnik")
24 (collectively, "Plaintiffs") and complains and alleges as follows:
25 **I.     INTRODUCTION**
26        1.     This is an action brought by Pak against his former joint employers, Defendants
27 EOCELL, INC. and EOCELL, LTD (collectively, "Eocell"), for various employment, corporate
28 and  business torts relating to Pak's employment with Eocell and his ownership interest with these

corporations, their failure to pay him wages, bonuses and commissions owed to him upon his wrongful termination, and the wrongful deprivation of a large equity and ownership stake in Eocell.

2.     Eocell, Ltd owns 100% of the shares in Eocell, Inc., and the two entities function as the alter ego of one another and served as his joint employer.  Eocell was fully owed and/or controlled by Defendant DRAGON GROUP INTERNATIONAL, LTD ("DGI"), which was controlled by its Executive Chairman and COO, Defendant MICHAEL LOH ("Loh"), who exercise majority control over the corporation.

3.     Pak served as Chief Operating Officer ("COO") of Eocell, Inc. upon his hiring on May 8, 2015, and was subsequently appointed as Chief Executive Officer ("CEO") of Eocell, Inc., and served in that role until his termination from the company on July 6, 2018.

4.     Pak was employed pursuant to a written employment agreement which stipulated that his employment from Eocell could only be terminated for "cause," or would, in the event of a termination without cause, be owed twelve months of his effective salary as severance.  His written employment agreement also entitled Pak for bonuses and commissions relating to his work and achievements.

5.     Throughout his employment, Pak was regularly recognized for numerous outstanding contributions to Eocell.  Nevertheless, despite generating extraordinary results for Eocell, DGI through Loh, conspired to wrongfully terminate Pak's employment from Eocell without cause and without pay.

6.     Despite terminating his employment without cause, Eocell also did not pay Pak the twelve months of salary he was entitled to as severance payment under his written employment agreement.  Eocell also failed to pay Pak commissions and bonuses that he was owed and entitled to under his written employment agreement.

7.     Further, Pak and Eocell and Loh entered a specific written agreement promising Pak bonus for securing additional investment in Eocell from a third party. Pak undertook significant efforts and secured a $20,000,000 investment in Eocell by Zhuhai Yinlong New Energy ("YLE") on or around August 10, 2017, which entitled Pak to a significant bonus. However, Eocell then wrongfully terminated Pak's employment right before YLE completed the closing of the investment, and refused to pay Pak the bonuses he was entitled to as a result.

8.     Prior to the conclusion of the investment agreement, the ratio of ownership of shares in Eocell, Ltd. was divided as follows: 93% owned by DGI, and 7% owned by Sputnik, a corporation wholly owned by Pak.  In the context of YLE's investment in Eocell, it was also agreed that Sputnik's shares in Eocell, Ltd. would rise to 20% ownership of Eocell, Ltd. Upon his termination, however, Eocell refused and failed to increase Sputnik's ownership share in Eocell, Ltd to 20% ownership in the corporation.

9.     Finally, after Pak's wrongful termination, DGI and Eocell wrongfully converted shareholder loans into shares of Eocell, Ltd, which caused Sputnik's share in the corporation to greatly dilute from approximately 7% to less than 2% of ownership of Eocell, Ltd.

10.    Accordingly, Pak now brings this action to recover all funds owed to him by Defendants, his lost share in Eocell, as well as all actual damages, general damages, civil penalties, statutory damages, and punitive damages he suffered as a result of the wrongful conduct he was subjected to.

## II.    PARTIES

11.    Pak is an individual and a resident of Belmont, California, located in San Mateo County, California.

12.    Sputnik is a British Virgin Islands corporation.  At all relevant times, Pak and Sputnik functioned as the alter ego of one another.

13.    Eocell, Inc. is a California corporation headquartered in San Jose, California.

14.    Eocell Ltd. is a Hong Kong corporation.  At all relevant times, Eocell, Inc. and Eocell Ltd. functioned as the alter ego of one another.

15.    DGI is a Singapore corporation.

16.    Loh is an individual and the Chairman of Eocell, and Executive Chairman and COO of DGI.  At all relevant times, DGI and Loh functioned as the alter ego of one another.  At all relevant times, Loh exercised majority control over Eocell and DGI, its management committees, and its board of directors.

17.    Defendants Does 1 through 20 are sued herein under fictitious names pursuant to California Code of Civil Procedure ("CCP") § 474. These Defendants are in some way liable for the damages sustained by Pak and Sputnik. Upon information and belief, Does 1 through 20 acted with and on behalf of Eocell, DGI, and Loh in the alleged violations. Pak and Sputnik do not, at

this time, know the true names or capacities of said unnamed Defendants, but prays that the same may be inserted herein when ascertained.

18.     Pak is informed and believes and thereon alleges that each of Eocell, DGI, Loh, and Defendants Does 1 through 20 (collectively, "Defendants") is sued herein was the agent and/or employee of each of the remaining Defendants or was the alter ego of each of the remaining Defendants, and each of them, was at all times acting within the purpose and scope of such agency, employment, and/or alter ego relationship.

19.     Upon information and belief, Loh and Does 1 through 20 collectively own a substantial majority of shares and equity of Eocell and DGI and together form a block of controlling shareholders and exercise majority control over the corporations, their management committees, and their boards of directors and owed duties to minority shareholders of those entities, including Pak and Sputnik.

20.     Upon information and belief, Loh and Does 1 through 20 all acted in concert and while assuming the duties of controlling shareholders of Eocell and DGI with respect to all acts by them alleged herein.

**III.     JURISDICTION AND VENUE**

21.     Jurisdiction and venue are proper because Pak's and Sputnik's claims and causes of action arose in the County of San Mateo where Pak was employed by Eocell, because records relating to the claims made in this action are located in San Mateo County, because numerous percipient witnesses and employees of Eocell live and work in San Mateo County, and because Eocell regularly does business in San Mateo County.

**IV.     FACTUAL ALLEGATIONS**

22.     Pak was hired as COO of Eocell on or about May 8, 2015, pursuant to a written employment agreement.

23.     Pak was eventually promoted to CEO of Eocell and the terms of his employment were most recently established by an Executive Employment Agreement dated October 23, 2017 (the "Executive Employment Agreement").

24.     The Executive Employment Agreement was a term agreement set for an initial three year period, and stated it would then automatically renew for successive one year periods unless either Eocell or Pak provided 30 days' written notice of their intention not to renew it.

25.     Notwithstanding this provision, the Executive Employment Agreement gave Pak the right to resign his employment at any time.

26.     The Executive Employment Agreement further gave Eocell the right to terminate the Agreement at any time, with or without cause, upon thirty (30) days' prior written notice to Pak, subject to provisions providing for additional severance compensation to Pak in the event he is terminated *without* cause.

27.     The Executive Employment Agreement provided that if Eocell terminated *without* cause, then Eocell was required to pay Pak severance compensation comprised of (1) an amount equal to twelve (12) months of Pak's Base Salary then in effect, payable in a single lump sum on the date of separation, plus (2) an amount equal to a prorated portion of his bonus, calculated to the separation date, to the extent Pak met his performance objectives for the most recent fiscal quarter, plus (3) Eocell's portion of the premiums required to continue Pak's and his dependents' health insurance for twelve (12) months after termination, provided Pak elects to continue the benefits, remains eligible for them, and does not acquire new health insurance benefits through a new employer.

28.     The Executive Employment Agreement provided that Eocell could terminate Pak's employment *for cause* at any time immediately upon written notice, but that a termination would only constitute a termination for "cause" if one or more of the following reasons occurred:

        a.     The failure or refusal of Pak to fulfill his obligations under the Executive Employment Agreement or the material breach by Pak of any of its terms if not cured within 15 days after being provided written notice of the breach;

        b.     Pak's abuse of alcohol, drugs, or illegal substances if such abuse interfered with Pak's ability to perform his duties;

        c.     Gross negligence, a material breach by Pak of his fiduciary duties, or Pak's commission of an act of fraud or embezzlement or misappropriation of funds, assets, or other property of Eocell or its affiliated companies;

        d.     Pak's engagement in conduct resulting in a material injury to the business, financial condition or operations of Eocell or its subsidiaries and which was not authorized by the Board; or

e.  Pak's conviction of, or plea of guilty or nolo contendere by Pak of a felony or any crime or civil violation involving misrepresentation, fraud, theft, or other willful act involving intentional wrongdoing.

29.  The Executive Employment Agreement further provided that if Eocell terminated Pak for cause, pursuant to any of the reasons enumerated in the preceding paragraph, then Pak would not be entitled to any severance compensation described above. Instead, Pak would only be entitled to payment of earned but unpaid base salary, unused vacation days, and any outstanding reimbursable expenses.

30.  On or about July 5, 2018, Eocell, through Loh, terminated Pak's employment with Eocell through a notice of termination delivered that same day.

31.  In its notice of termination, Eocell purported to terminate Pak's employment immediately for "cause," purportedly based upon Pak's alleged "gross negligence and breach of fiduciary duties" in his position as CEO of Eocell.

32.  Eocell contended that Pak did so by (1) refusing to entertain a funding proposal from DGI, despite the fact Eocell had accrued and unpaid employee wages and had no long term financing plan in place, (2) threatening to withhold performance of his duties and demanding payment of bonus compensation, which Pak allegedly never earned, as a precondition to considering any additional funding proposal for Eocell, (3) wrongfully evicting EoPlex, Inc. from the office space subleased by Eocell, and (4) advising representatives of DGI not to meet with Pak and threatening those representatives with arrest and deportation.

33.  Eocell's proffered reasons for terminating Pak's employment did not fall within the definition of termination "for cause" under the terms of Pak's Executive Employment Agreement. None of the aforementioned reasons for Pak's termination constitute either "gross negligence" nor a "breach of fiduciary duties," nor any other elements that would justify a termination "for cause" as that term is defined in the Executive Employment Agreement.

34.  Any refusal by Pak to entertain a funding proposal from DGI was a result of his sound business judgment. Moreover, Pak denies ever conditioning performance of his duties upon payment of unearned bonus compensation, denied wrongfully evicting any third party, and denies threatening representatives of DGI with arrest and deportation.

35.  Accordingly, Pak's termination from Eocell was not "for cause" at all. Instead, Eocell's proffered reasons for Pak's termination were nothing more than a pretext to deny Pak

any severance compensation promised to him under the terms of the Executive Employment Agreement.

36.     Upon his termination, Eocell did not pay Pak any severance compensation whatsoever.

37.     Among other things, Eocell did not pay Pak an amount equal to twelve (12) months of Pak's Base Salary then in effect, as a single lump sum on the date of separation.

38.     Eocell also failed to pay Pak his production bonus, prorated according to his separation date, after Pak met his performance objectives for the most recent fiscal quarter. This production bonus totaled approximately $175,000 for work done from approximately October 20, 2017 through October 25, 2018.

39.     Eocell also refused to pay Pak any further portion of health insurance premiums required to continue Pak's and his dependents' health insurance for twelve (12) months after his separation date, even after he elected to continue said benefits.

40.     Further, Eocell also did not pay Pak approximately $575,000 in commissions earned by Pak from August 10, 2017 through September 10, 2018 in the course of his employment with Eocell.

41.     On or about May 13, 2017, Loh and Pak had finalized an agreement pursuant to which Eocell agreed to compensate Pak for bringing in new investment capital to Eocell (the "Investment Bonus Agreement").

42.     On or about August 10, 2017, Pak finalized an investment agreement with outside investment capital, YLE, pursuant to which YLE agreed to invest $20,000,000 into Eocell.

43.     Based upon the terms of the Investment Bonus Agreement, Pak earned a bonus payable to him of $1,104,000 for his services in securing that new investment, in addition to other amounts identified above. Nevertheless, Eocell has refused to pay Pak any further bonus pursuant to the Investment Bonus Agreement.

44.     Instead of paying Pak pursuant to the Investment Bonus Agreement, Eocell terminated Pak's employment before YLE effectuated its investment into Eocell, with the express purpose of denying Pak any compensation pursuant to the Investment Bonus Agreement. However, upon information and belief, YLE either still intends to make the $20,000,000 investment into Eocell as of the present or has by now completed that investment.

45.     In May 2015, Pak and Loh of DGI negotiated a joint venture and shareholder agreement ("Shareholder Agreement") pursuant to which DGI and Sputnik became joint shareholders of Eocell, with DGI owning 93% and Sputnik owning 7%.

46.     Following the completion of YLE's acquisition of Eocell shares, the shareholders of Eocell were to be as follows: YLE: 40%; DGI: 40%; and Sputnik: 20%. This valuation suggests that the post-financing valuation of Eocell was to be $50,000,000 and the value of Sputnik's shares in Eocell would have been $10,000,000.

47.     As a result of Pak's termination and DGI and Eocell's subsequent actions, Pak has been denied his increased share of Eocell.

48.     In December 2018, DGI, Loh and Eocell caused the conversion of an unknown amount of debt of Eocell into a new issuance of shares of Eocell, and did so without abiding by provisions in the Shareholder Agreement requiring appointment of a valuation specialist. The conversion of debt into shares reduced Sputnik's share in Eocell from approximately 7% to less than 2%.

49.     Pak was prevented from attending the Eocell meeting in which DGI converted the debt into a new issuance of shares.

50.     As a result of Defendants' wrongful action, Pak and Sputnik lost a significant equity stake at Eocell.

## FIRST CAUSE OF ACTION
### Breach of Contract
### (Alleged by Plaintiffs against all Defendants)

51.     Plaintiffs repeat and re-allege all of the previous allegations herein by reference.

52.     Pak and Eocell, through Loh, entered into a written employment agreement for his employment at Eocell, which was eventually superseded in all respects by the Executive Employment Agreement. The Executive Employment Agreement was the operative employment agreement governing the terms and conditions of Pak's employment with Eocell at the time of his termination.

53.     At all relevant times, Pak performed all of his obligations under the Executive Employment Agreement and exercised sound business judgment when carrying out his job duties for Eocell.

54.     Eocell failed to perform all of its obligations under the Executive Employment Agreement when it terminated Pak's employment without cause, while purporting to terminate

his employment for cause without valid reasons for doing so, and subsequently failing to tender any severance compensation to Pak pursuant to the terms of the Executive Employment Agreement.

55.     Further, Pak and Eocell, through Loh, entered into the Investment Bonus Agreement, whereby Eocell agreed to compensate Pak a certain bonus amount if Pak could secure additional investment in Eocell from a third party.

56.     At all relevant times, Pak performed all of his obligations under the Investment Bonus Agreement, including but not limited to securing a commitment of a $20,000,000 investment into Eocell from YLE.

57.     Eocell failed to perform all of its obligations under the Investment Bonus Agreement when it refused to tender any bonus payment to Pak following his performance of all obligations under it, including but not limited to securing YLE's substantial monetary investment into Eocell.

58.     Further, Sputnik and DGI, through Loh, entered into the Shareholder Agreement, which provided that DGI owns 93% of Eocell and that Sputnik owned 7% of Eocell. The Shareholder Agreement also provided, among other things, that prior to issuing new shares or converting shareholder loans into shares, Eocell was required to enlist the services of a valuation specialist to establish a value of Eocell prior to the share issuance or conversion.

59.     At all relevant times, Pak and Sputnik performed all of their obligations under the Shareholder Agreement.

60.     Nevertheless, in December 2018, Defendants engaged in an action to convert an unknown amount of shareholder loans of Eocell into a new issuance of shares of Eocell, and did so without abiding by provisions in the Shareholder Agreement requiring appointment of a valuation specialist beforehand.  By doing so, Defendants breached the Shareholder Agreement.

61.     Defendant's actions, as described above, directly and proximately have caused and continue to cause Pak and Sputnik to suffer damages in an amount to be proven at trial.

### SECOND CAUSE OF ACTION
### Breach of the Duty of Good Faith and Fair Dealing
### (Alleged by Plaintiffs against all Defendants)

62.     Plaintiffs repeat and re-allege all of the previous allegations herein by reference.

63.     In every contract or agreement there is an implied promise of good faith and fair dealing.  This means that each party will not do anything to unfairly interfere with the right of

any other party to receive the benefits of the contract; however, the implied promise of good faith and fair dealing cannot create obligations that are inconsistent with the terms of the contract.

64.     As such, the Executive Employment Agreement, the Investment Bonus Agreement, and the Shareholder Agreement all contained an implied promise of good faith and fair dealing.

65.     Eocell and Loh have breached the implied covenant of good faith and fair dealing present in the Executive Employment Agreement and the Investment Bonus Agreement.

66.     Pak performed all or substantially all of the obligations required of him under the Executive Employment Agreement and the Investment Bonus Agreement.

67.     Eocell and Loh breached the implied covenant of good faith and fair dealing present in the Executive Employment Agreement by unduly interfering with Pak's entitlement to the severance compensation he was promised under its terms, by purporting to terminate Pak *for* cause when he was really terminated *without* cause, solely to deny him payment of that severance compensation.

68.     Eocell and Loh breached the implied covenant of good faith and fair dealing present in the Investment Bonus Agreement by unduly interfering with Pak's entitlement to the bonus payments promised to him therein in exchange for securing further capital investment from outside sources, after Pak had fulfilled those obligations by securing investment from YLE, among others.

69.     Further, DGI and Loh have breached the implied covenant of good faith and fair dealing present in the Shareholder Agreement.

70.     Pak and Sputnik performed all or substantially all of the obligations required of them under the Shareholder Agreement.

71.     DGI and Loh breached the implied covenant of good faith and fair dealing present in the Shareholder Agreement by, among other things, unduly interfering with Pak and Sputnik's percentage share of Eocell and expected percentage share of Eocell following the investment by YLE, by improperly converting debt into new shares and unfairly diluting Pak and Sputnik's shares in Eocell and doing so while breaching the Shareholder Agreement itself and going ahead even as Pak could not attend the Board meetings in which this occurred.

72.     Defendant's actions, as described above, directly and proximately have caused and continue to cause Pak and Sputnik to suffer damages in an amount to be proven at trial.

### THIRD CAUSE OF ACTION
**Failure to Pay Wages Due and Owing in Violation of Labor Code §§ 200, 201, 202 & 218
(Alleged by Pak against all Defendants)**

73.    Plaintiffs repeat and re-allege all of the previous allegations herein by reference.

74.    As stated above, Pak worked for Eocell pursuant to the Executive Employment Agreement which promised him, among other benefits, wage payments, commissions and bonus payments, health insurance premiums, and severance compensation in the event he was terminated without cause.

75.    Upon his termination, Eocell did not pay Pak any severance compensation whatsoever. Among other things, Eocell did not pay Pak an amount equal to twelve (12) months of Pak's Base Salary then in effect, as a single lump sum on the date of separation.

76.    Eocell also failed to pay Pak his production bonus, prorated according to his separation date, after Pak met his performance objectives for the most recent fiscal quarter. This production bonus totaled approximately $175,000 for work done from approximately October 20, 2017 through October 25, 2018.

77.    Eocell also refused to pay Pak any further portion of health insurance premiums required to continue Pak's and his dependents' health insurance for twelve (12) months after his separation date, even after he elected to continue said benefits.

78.    Further, Eocell also did not pay Pak approximately $575,000 in commissions earned by Pak from August 10, 2017 through September 10, 2018 n the course of his employment with Eocell.

79.    All of the above compensation counts as "wages" for purposes of the California Labor Code and California law regarding the payment of wages. *Davis v. Farmers Ins. Exchange* (2016) 245 Cal.App.4th 1302, 1332, fn. 20 ("wages include not just salaries earned hourly, but also bonuses, profit-sharing plans, and commissions").

80.    Further, as the breach involves a failure to pay wages due and owing under California law, any "other person acting on behalf of an employer" who fails to pay such wages or causes the failure may also be held liable as the employer for such a violation of law. Labor Code § 558.1. As such, Loh and DGI, whom exercised majority control over Eocell and led Eocell to not pay Plaintiff his wages due and owing, may be held personally liable for failure to pay Plaintiff all wages due and owing.

81.     As such, Plaintiff is entitled to damages and civil penalties according to proof at trial.

### FOURTH CAUSE OF ACTION
**Failure to Pay Earned Wages Upon Discharge in Violation of Labor Code § 203**
**(Alleged by Pak against Eocell)**

82.     Plaintiffs repeat and re-allege all of the previous allegations herein by reference.

83.     Pursuant to Labor Code §§ 201 & 202, if an employee is separated from employment, the wages earned and unpaid at the time of discharge are due and payable immediately.

84.     Labor Code § 203 provides that where an employer willfully fails to make such timely payment, the employer must, as a penalty, continue to pay the employee's wages until the back wages are paid in full or an action is commenced.

85.     Pak was terminated from his employment with Eocell on July 6, 2018.  However, Eocell terminated Pak's employment without paying Pak the full compensation that Pak rightfully earned from his employment with Eocell, which he has yet to receive to this day.

86.     Eocell willfully refused and continues to refuse to pay Pak all wages earned in a timely manner, as required by Labor Code § 203.

87.     Therefore, Pak is entitled to restitution and waiting time penalties pursuant to Labor Code § 203.

### FIFTH CAUSE OF ACTION
**Failure to Furnish Wage Statements in Violation of Labor Code § 226**
**(Alleged by Pak against Eocell)**

88.     Plaintiffs repeat and re-allege all of the previous allegations herein by reference.

89.     At all times relevant herein, Eocell failed to issue accurate itemized wage statements that properly and accurately itemized the number of hours worked by Pak and the actual payments owed to Pak thereto, in violation of Labor Code 226(a) and IWC Wage Order 5 § 7.

90.     Pak did not receive an accurate wage statement because commissions he is owed were not reflected in his wage statements.

91.     Eocell knowingly and intentionally failed to comply with Labor Code § 226(a) and IWC Wage Order 5 § 7, causing damages to Pak.

92.     These damages, including but not limited to costs expended calculating his true amount of hours worked and the amount of employment taxes not properly paid to state and federal authorities, are difficult to estimate.

93.     Therefore, Pak elects to recover statutory damages of $50.00 for the initial pay period in which the violation occurred and $100.00 for each violation in subsequent pay periods, pursuant to Labor Code § 226(e), up to the statutory maximum of $4,000.00.

## SIXTH CAUSE OF ACTION
### Breach of Fiduciary Duty
**(Alleged by Plaintiffs, both individually and derivatively on behalf of Eocell, LTD against Eocell, Inc., Loh and DGI)**

94.     Plaintiffs repeat and re-allege all of the previous allegations herein by reference.

95.     A fiduciary duty under common law arises when one individual enters into a confidential relationship with another, which may take many forms. Fiduciary duties are also imposed as a matter of law in certain technical, legal relationships, including, but not limited to, agents towards principals, partner towards partner, joint venturer toward co-joint venturer, corporate officers and directors toward corporation and its shareholders, and controlling shareholders towards minority shareholders. The duty of a fiduciary requires that one individual act with the utmost loyalty and in the highest good faith toward the other in all proceedings regarding the scope of the fiduciary relationship.

96.     Eocell, Inc., Loh and DGI had fiduciary relationships with Pak and Sputnik, respectively, because all parties were shareholders of Eocell, and Eocell, Inc., Loh and DGI collectively exercised majority control over Eocell while Pak and Sputnik were and are minority shareholders of Eocell. Eocell, Inc., Loh and Pak also owed fiduciary duties to each other and to Eocell by virtue of their statutes as corporate officers and directors of Eocell.

97.     As Eocell, Inc., Loh and DGI controlled a majority share of Eocell versus Plaintiffs' minority share, Eocell, Inc., Loh and DGI owed Plaintiffs a fiduciary duty to (1) avoid using their power to control Eocell's corporate activities to benefit themselves alone or in a manner detrimental to the minority, and (2) to instead use their ability to control Eocell in a fair, just, and equitable manner for the benefit of all shareholders, including Pak and Sputnik.

98.     At all relevant times, Eocell, Inc., Loh and DGI acted in concert with one another and, as a group, acted as a controlling and majority shareholder of Eocell and assumed all duties of a controlling and majority shareholder. As they assumed such duties, they jointly owed a duty

to Pak and Sputnik, as minority shareholders, to use their ability to control the corporation in a fair, just, and equitable manner and refrain from using their power to control corporate activities to benefit themselves alone or to the detriment of Pak, Sputnik, or other minority shareholders.

99.     Eocell, Inc., Loh and DGI breached the duty of care they owed to Pak and Sputnik by engaging and/or ratifying in the conduct described above, including, but not limited to, breaching the Executive Employment Agreement, Investment Bonus Agreement, and Shareholder Agreement in the manner described above by, among other things, depriving Pak from wages, commissions, and bonuses he was entitled to and improperly depriving and diluting Sputnik of equity in Eocell, LTD.

100.    None of the above actions were made with the utmost loyalty and in the highest good faith towards Pak and Sputnik.  Instead, Eocell, Inc., Loh and DGI engaged in this conduct to control Eocell's corporate activities to benefit themselves in a manner detrimental to Pak and Sputnik, with the purpose of diminishing the value of Pak and Sputnik's shares in Eocell and preventing payment of compensation and bonuses that Pak became entitled to under the contracts referenced above.

101.    Eocell, Inc., Loh and DGI's misconduct alleged herein constitutes an abuse of their ability to control and influence Eocell for which they are legally responsible.

102.    Eocell, Inc., Loh and DGI's misconduct alleged herein also constitutes a waste of Eocell's corporate property by its own directors and officers.

103.    Eocell, Inc., Loh and DGI's misconduct alleged herein also constitutes a breach of their duties as a controlling shareholder owed to Pak and Sputnik as minority shareholders.

104.    As a direct and proximate result of Eocell, Inc., Loh and DGI's breaches of duty to Plaintiffs, Pak and Sputnik have suffered damages as shareholders of Eocell, Ltd by having the value of their shares in Eocell improperly diluted, in breach of contracts and agreements that were intended to increase the value and percentage of their shares.

105.    As a direct and proximate result of the Eocell, Inc., Loh and DGI's breaches of duty to Pak, Pak has also suffered damages as an individual.  Eocell, Inc., Loh and DGI acted in concert, through Eocell, to, among other things, terminate Pak's employment in Eocell without cause and without payment of compensation owed to Pak as a result.  Eocell, Inc., Loh and DGI's actions, as described above, directly and proximately have caused, and continue to cause, Pak to suffer damages in an amount to be proven at trial including loss of income and work opportunities

1    and have caused severe emotional distress, anguish, pain and suffering, humiliation, indignity,

2    personal embarrassment, and damage to his professional reputation.

3        106.    In doing the acts herein alleged, Eocell, Inc., Loh and DGI  acted with oppression,

     fraud or malice, and in reckless or in willful disregard of Plaintiffs' rights.  Plaintiffs are therefore

4    entitled to punitive damages in an amount according to proof at the time of trial.

5                            **SEVENTH CAUSE OF ACTION**
                              **Breach of the Duty of Care**
6    **(Alleged by Plaintiffs, both individually and derivatively on behalf of Eocell, LTD against**
7                                 **Eocell, Inc., Loh and DGI)**

8        107.    Plaintiffs repeat and re-allege all of the previous allegations herein by reference.

9        108.    Directors and officers of a corporation owe a fiduciary duty of care to the

     corporation and its shareholders.  Moreover, Eocell, Inc., Loh and DGI had a fiduciary duty of
10
     care to Pak and Sputnik because they collectively exercised majority control over Eocell to the
11
     detriment of Pak and Sputnik, minority shareholders in Eocell. The fiduciary duty of care requires
12
     that a director or officer of a corporation serve, in good faith, in a manner that the director or
13
     officer believes to be in the best interests of the corporation and its shareholders and with such
14
     care and reasonable inquiry that an ordinarily prudent person in a like position would use under
15
     similar circumstances.

16       109.    The business decisions of a director or officer will generally not violate the duty

17   of care so long as the director or officer was disinterested and independent, acting in good faith,

     and reasonably diligent in informing themselves of the facts before making the business decision
18
     in question.
19
         110.    Loh, at all relevant times herein, was and is a director and officer of Eocell, and as
20
     such owed a fiduciary duty of care towards Pak and Sputnik and other Eocell shareholders to act
21
     in good faith and in a manger that is in the best interests of Eocell and its shareholders including
22
     Pak and Sputnik.

23       111.    Eocell, Inc., Loh and DGI had fiduciary relationships with Pak and Sputnik,

24   respectively, because all parties were shareholders of Eocell and Loh and DGI collectively

25   exercised majority control over Eocell while Pak and Sputnik were and are minority shareholders

     of Eocell.  Eocell, Inc., Loh and Pak also owed fiduciary duties to each other and to Eocell by
26
     virtue of their statutes as corporate officers and directors of Eocell.
27

28

112.    As Eocell, Inc., Loh and DGI controlled a majority share of Eocell versus Plaintiffs' minority share, Eocell, Inc., Loh and DGI owed Plaintiffs a fiduciary duty to (1) avoid using their power to control Eocell's corporate activities to benefit themselves alone or in a manner detrimental to the minority, and (2) to instead use their ability to control Eocell in a fair, just, and equitable manner for the benefit of all shareholders, including Pak and Sputnik.

113.    At all relevant times, Eocell, Inc., Loh and DGI acted in concert with one another and, as a group, acted as a controlling and majority shareholder of Eocell and assumed all duties of a controlling and majority shareholder.  As they assumed such duties, they jointly owed a duty to Pak and Sputnik, as minority shareholders, to use their ability to control the corporation in a fair, just, and equitable manner and refrain from using their power to control corporate activities to benefit themselves alone or to the detriment of Pak, Sputnik, or other minority shareholders.

114.    Eocell, Inc., Loh and DGI breached the duty of care they owed to Pak and Sputnik by engaging and/or ratifying in the conduct described above, including, but not limited to, breaching the Executive Employment Agreement, Investment Bonus Agreement, and Shareholder Agreement in the manner described above by, among other things, depriving Pak from wages, commissions, and bonuses he was entitled to and improperly depriving and diluting Sputnik of equity in Eocell, LTD.

115.    None of the above actions were made with the utmost loyalty and in the highest good faith towards Pak and Sputnik.  Instead, Eocell, Inc., Loh and DGI engaged in this conduct to control Eocell's corporate activities to benefit themselves in a manner detrimental to Pak and Sputnik, with the purpose of diminishing the value of Pak and Sputnik's shares in Eocell and preventing payment of compensation and bonuses that Pak became entitled to under the contracts referenced above.

116.    Eocell, Inc., Loh and DGI's misconduct alleged herein constitutes an abuse of their ability to control and influence Eocell for which they are legally responsible.

117.    Eocell, Inc., Loh and DGI's misconduct alleged herein also constitutes a waste of Eocell's corporate property by its own directors and officers.

118.    Eocell, Inc., Loh and DGI's misconduct alleged herein also constitutes a breach of their duties as a controlling shareholder owed to Pak and Sputnik as minority shareholders.

119.    As a direct and proximate result of Eocell, Inc., Loh and DGI's breaches of duty to Plaintiffs, Pak and Sputnik have suffered damages as shareholders of Eocell, Ltd. by having

the value of their shares in Eocell improperly diluted, in breach of contracts and agreements that were intended to increase the value and percentage of their shares.

120.     As a direct and proximate result of Eocell, Inc., Loh and DGI's breaches of duty to Pak, Pak has also suffered damages as an individual.  Eocell, Inc., Loh and DGI acted in concert, through Eocell, to, among other things, terminate Pak's employment in Eocell without cause and without payment of compensation owed to Pak as a result.  Eocell, Inc., Loh and DGI's actions, as described above, directly and proximately have caused, and continue to cause, Pak to suffer damages in an amount to be proven at trial including loss of income and work opportunities and have caused severe emotional distress, anguish, pain and suffering, humiliation, indignity, personal embarrassment, and damage to his professional reputation.

121.     In doing the acts herein alleged, Eocell, Inc., Loh and DGI  acted with oppression, fraud or malice, and in reckless or in willful disregard of Plaintiffs' rights.  Plaintiffs are therefore entitled to punitive damages in an amount according to proof at the time of trial.

### EIGHTH CAUSE OF ACTION
**Breach of the Duty of Loyalty**
**(Alleged by Plaintiffs, both individually and derivatively on behalf of Eocell, LTD against Eocell, Inc., Loh and DGI)**

122.     Plaintiffs repeat and re-allege all of the previous allegations herein by reference.

123.     Directors and officers of a corporation owe a fiduciary duty of loyalty to the corporation and its shareholders.  Eocell, Inc., Loh and DGI had a fiduciary duty of loyalty to Pak and Sputnik because they collectively exercised majority control over Eocell to the detriment of Pak and Sputnik.  The fiduciary duty of loyalty requires that a director or officer of a corporation place the corporation's and stockholder's interests ahead of any other business or personal interests of that director or officer.

124.     Eocell, Inc., Loh and DGI had fiduciary relationships with Pak and Sputnik, respectively, because all parties were shareholders of Eocell, and Eocell, Inc., Loh and DGI collectively exercised majority control over Eocell while Pak and Sputnik were and are minority shareholders of Eocell.  Eocell, Inc., Loh and Pak also owed fiduciary duties to each other and to Eocell by virtue of their statutes as corporate officers and directors of Eocell.

125.     As Eocell, Inc., Loh and DGI controlled a majority share of Eocell versus Plaintiffs' minority share, Eocell, Inc., Loh and DGI owed Plaintiffs a fiduciary duty to place Eocell's interests ahead of their own business and personal interests.

126.    At all relevant times, Eocell, Inc., Loh and DGI acted in concert with one another and, as a group, acted as a controlling and majority shareholder of Eocell and assumed all duties of a controlling and majority shareholder. As they assumed such duties, they jointly owed a duty to Pak and Sputnik, as minority shareholders, to use their ability to control the corporation in a fair, just, and equitable manner and refrain from using their power to control corporate activities to benefit themselves alone or to the detriment of Pak, Sputnik, or other minority shareholders.

127.    Eocell, Inc., Loh and DGI breached the duty of care they owed to Pak and Sputnik by engaging and/or ratifying in the conduct described above, including, but not limited to, breaching the Executive Employment Agreement, Investment Bonus Agreement, and Shareholder Agreement in the manner described above by, among other things, depriving Pak from wages, commissions, and bonuses he was entitled to and improperly depriving and diluting Sputnik of equity in Eocell, LTD.

128.    None of the above actions were made with the utmost loyalty and in the highest good faith towards Pak and Sputnik. Instead, Eocell, Inc., Loh and DGI engaged in this conduct to control Eocell's corporate activities to benefit themselves in a manner detrimental to Pak and Sputnik, with the purpose of diminishing the value of Pak and Sputnik's shares in Eocell and preventing payment of compensation and bonuses that Pak became entitled to under the contracts referenced above.

129.    Eocell, Inc., Loh and DGI's misconduct alleged herein constitutes an abuse of their ability to control and influence Eocell for which they are legally responsible.

130.    Eocell, Inc., Loh and DGI's misconduct alleged herein also constitutes a waste of Eocell's corporate property by its own directors and officers.

131.    Eocell, Inc., Loh and DGI's misconduct alleged herein also constitutes a breach of their duties as a controlling shareholder owed to Pak and Sputnik as minority shareholders.

132.    As a direct and proximate result of Eocell, Inc., Loh and DGI's breaches of duty to Plaintiffs, Pak and Sputnik have suffered damages as shareholders of Eocell, Ltd. by having the value of their shares in Eocell improperly diluted, in breach of contracts and agreements that were intended to increase the value and percentage of their shares.

133.    As a direct and proximate result of the Eocell, Inc., Loh and DGI's breaches of duty to Pak, Pak has also suffered damages as an individual. Eocell, Inc., Loh and DGI acted in concert, through Eocell, to, among other things, terminate Pak's employment in Eocell without

cause and without payment of compensation owed to Pak as a result. Eocell, Inc., Loh and DGI's actions, as described above, directly and proximately have caused, and continue to cause, Pak to suffer damages in an amount to be proven at trial including loss of income and work opportunities and have caused severe emotional distress, anguish, pain and suffering, humiliation, indignity, personal embarrassment, and damage to his professional reputation.

134.    In doing the acts herein alleged, Eocell, Inc., Loh and DGI's acted with oppression, fraud or malice, and in reckless or in willful disregard of Plaintiffs' rights. Plaintiffs are therefore entitled to punitive damages in an amount according to proof at the time of trial.

## NINTH CAUSE OF ACTION
**Unfair, Unlawful, and/or Fraudulent Business Practices in Violation of Business and Professions Code § 17200, *et seq*.**
**(Alleged by Plaintiffs against all Defendants)**

135.    Pak and Sputnik repeats and re-alleges all of the previous allegations herein by reference.

136.    The California Business and Professions Code ("B&P Code") § 17200, et seq. (the "Unfair Business Practices Act") prohibits unfair competition in the form of any unlawful, unfair or fraudulent business act or practice.

137.    B&P Code § 17202 provides that "[N]otwithstanding Section 2289 of the Civil Code, specific or preventative relief may be granted to enforce a penalty, forfeiture, or penal law in case of unfair competition."

138.    B&P Code § 1703 provides that the Court may restore to any person in interest any money or property which may have been acquired by means of such unfair competition.

139.    B&P Code § 17204 allows "any person who has suffered injury in fact and has lost money or property as a result of such unfair competition" to prosecute a civil action for violation of this code.

140.    B&P code § 17204 allows "any person acting for the interest of itself, its members or the general public" to prosecute a civil action for violation of the Unfair Business Practices Act.

141.    Defendants has committed acts of unfair competition as defined by the Unfair Business Practices Act, by engaging in the unlawful, unfair and fraudulent practices and acts described above.

142.    The acts and practices described above constitute unfair, unlawful and fraudulent business practices, and unfair competition, within the meaning of the Unfair Business Practices Act.

143.    The acts and practices described above have allowed and will allow Defendants to gain an unfair competitive advantage over law-abiding competitors who do not seek to unlawfully discriminate, retaliate, and terminate employees on the basis of marital status, religion, or political affiliation.

144.    Plaintiffs are entitled to restitution pursuant to B&P Code § 17203 for all moneys unlawfully taken from him by Defendants during the four-year period prior to the filing of this Complaint.

145.    Pursuant to the B&P Code § 17202, Plaintiffs' success in this action will enforce important rights affecting the public interest.

146.    Plaintiffs takes upon himself the enforcement of these laws and prosecution of these lawful claims.  There is a financial burden involved in pursuing this action. Because this action is seeking to vindicate an important public right, it would be against the interests of justice to penalize Plaintiffs by forcing him to pay attorneys' fees from any amount recovered from this action.

147.    An award of attorneys' fees is appropriate for this cause of action, inter alia, pursuant to Code of Civil Procedure § 1021.5 and other applicable laws, because: a) this action will confer a significant benefit upon the general public; b) there is a financial burden involved in pursuing this action; and c) it would be against the interest of justice to force Pak to pay attorneys' fees from any amount recovered in this action.

### JURY DEMAND

148.    Plaintiffs hereby demands a trial by jury in this action.

### PRAYER FOR RELIEF

Wherefore, Plaintiffs prays for the following relief:

1.    Actual damages and/or restitution;

2.    General damages;

3.    Punitive damages;

4.    Statutory damages and penalties;

5.    Reasonable attorneys' fees as permitted by law;

6.    Costs of the suit incurred herein as permitted by law; and

7.    All other further relief as this Court deems just and proper.

Dated: July 2, 2020                                    PERETZ & ASSOCIATES


By:    _____
       Yosef Peretz
       David Garibaldi
       Attorneys for Plaintiffs
       MICHAEL PAK and
       SPUTNIK ENERGY, LTD

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*
Yosef Peretz (SBN 193551)
Peretz & Associates, 22 Battery ST, Suite 200
San Francisco, CA 94111

| | |
|---|---|
| TELEPHONE NO.: 415-732-3777 | FAX NO. *(Optional):* 415-732-3791 |

ATTORNEY FOR *(Name):*   Plaintiffs

**FOR COURT USE ONLY**

**Electronically FILED**
by Superior Court of California, County of San Mateo
ON  **7/2/2020**
By_____ **/s/ Una Finau**
**Deputy Clerk**

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  San Mateo
STREET ADDRESS:  400 County Center
MAILING ADDRESS:
CITY AND ZIP CODE:  Redwood City, CA 94063
BRANCH NAME:

CASE NAME:
Pak, et al., v. Eocell Inc., et al.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| [X] Unlimited   [ ] Limited | [ ] Counter   [ ] Joinder | 20-CIV-02725 |
| (Amount demanded exceeds $25,000) | (Amount demanded is $25,000) | Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | JUDGE: |
| | | DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)
**Employment**
[ ] Wrongful termination (36)
[X] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)
**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)
**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)
**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
[ ] Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [ ] is  [X] is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. [X] monetary  b. [X] nonmonetary; declaratory or injunctive relief  c. [X] punitive
4. Number of causes of action *(specify):*  Nine (9)
5. This case [ ] is  [X] is not  a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date:   July 2, 2020

Yosef Peretz
(TYPE OR PRINT NAME)

▶

(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10

CM-010

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

**CASE TYPES AND EXAMPLES**

**Auto Tort**
Auto (22)–Personal Injury/Property
 Damage/Wrongful Death
 Uninsured Motorist (46) *(if the*
  *case involves an uninsured*
  *motorist claim subject to*
  *arbitration, check this item*
  *instead of Auto)*
**Other PI/PD/WD (Personal Injury/**
**Property Damage/Wrongful Death)**
**Tort**
Asbestos (04)
 Asbestos Property Damage
 Asbestos Personal Injury/
  Wrongful Death
Product Liability *(not asbestos or*
 *toxic/environmental)* (24)
Medical Malpractice (45)
 Medical Malpractice–
  Physicians & Surgeons
 Other Professional Health Care
  Malpractice
Other PI/PD/WD (23)
 Premises Liability (e.g., slip
  and fall)
 Intentional Bodily Injury/PD/WD
  (e.g., assault, vandalism)
 Intentional Infliction of
  Emotional Distress
 Negligent Infliction of
  Emotional Distress
 Other PI/PD/WD
**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
 Practice (07)
Civil Rights (e.g., discrimination,
 false arrest) *(not civil*
 *harassment)* (08)
Defamation (e.g., slander, libel)
 (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
 Legal Malpractice
 Other Professional Malpractice
  *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)
**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
 Breach of Rental/Lease
  Contract *(not unlawful detainer*
   *or wrongful eviction)*
 Contract/Warranty Breach–Seller
  Plaintiff *(not fraud or negligence)*
 Negligent Breach of Contract/
  Warranty
 Other Breach of Contract/Warranty
Collections (e.g., money owed, open
 book accounts) (09)
 Collection Case–Seller Plaintiff
 Other Promissory Note/Collections
  Case
Insurance Coverage *(not provisionally*
 *complex)* (18)
 Auto Subrogation
 Other Coverage
Other Contract (37)
 Contractual Fraud
 Other Contract Dispute
**Real Property**
Eminent Domain/Inverse
 Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
 Writ of Possession of Real Property
 Mortgage Foreclosure
 Quiet Title
 Other Real Property *(not eminent*
  *domain, landlord/tenant, or*
  *foreclosure)*
**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal*
 *drugs, check this item; otherwise,*
 *report as Commercial or Residential)*
**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
 Writ–Administrative Mandamus
 Writ–Mandamus on Limited Court
  Case Matter
 Writ–Other Limited Court Case
  Review
Other Judicial Review (39)
 Review of Health Officer Order
 Notice of Appeal–Labor
  Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.**
**Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
 *(arising from provisionally complex*
 *case type listed above)* (41)
**Enforcement of Judgment**
Enforcement of Judgment (20)
 Abstract of Judgment (Out of
  County)
 Confession of Judgment *(non-*
  *domestic relations)*
 Sister State Judgment
 Administrative Agency Award
  *(not unpaid taxes)*
 Petition/Certification of Entry of
  Judgment on Unpaid Taxes
 Other Enforcement of Judgment
  Case
**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified*
 *above)* (42)
 Declaratory Relief Only
 Injunctive Relief Only *(non-*
  *harassment)*
 Mechanics Lien
 Other Commercial Complaint
  Case *(non-tort/non-complex)*
 Other Civil Complaint
  *(non-tort/non-complex)*
**Miscellaneous Civil Petition**
Partnership and Corporate
 Governance (21)
Other Petition *(not specified*
 *above)* (43)
 Civil Harassment
 Workplace Violence
 Elder/Dependent Adult
  Abuse
 Election Contest
 Petition for Name Change
 Petition for Relief From Late
  Claim
 Other Civil Petition

**CIVIL CASE COVER SHEET**

**For your protection and privacy, please press the Clear**



**SUPERIOR COURT OF SAN MATEO COUNTY**
400 County Center, Redwood City, CA 94063
www.sanmateocourt.org




ENDORSED FILED
SAN MATEO COUNTY

JUL 0 2 2020

Clerk of the ~~ ~~ Court
BY___ LINA FINAU
DEPUTY CLERK

## NOTICE OF CASE MANAGEMENT CONFERENCE

MICHAEL PARK

Case No:  **20-CIV-02725**

vs.

MICHAEL LOH

Date and  **Thursday, 11/12/2020**
Time:  **at 9:00 AM**

Dept.:  **11**

You are hereby given notice of your Case Management Conference. The date, time and department have been written above.

1. You are hereby given notice of your Case Management Conference. The date, time and department are noted above:
    a) Serve all named defendants and file proofs of service on those defendants with the court within 60-days of filing the complaint (CRC 201.7).
    b) Serve a copy of this notice, Case Management Statement and ADR Information Sheet on all named parties in this action. Documents are available under the online under the CIVIL CMC Packet section at: http://sanmateocourt.org/court_divisions/civil/
    c) File and serve a completed Case Management Statement at least 15-days before the Case Management Conference [CRC 212(g)]. Failure to do so may result in monetary sanctions.
    d) Meet and confer, in person or by telephone, to consider each of the issues identified in CRC 212(f) no later than 30-days before the date set for the Case Management Conference.

2. If you fail to follow the orders above, you are ordered to show cause as to why you should not be sanctioned. The order to Show Cause hearing will be at the same time as the Case Management Conference hearing. Sanctions may include monetary, evidentiary or issue sanctions as well as striking pleadings and/or dismissal.

3. Parties may proceed to an Appropriate Dispute Resolution process ("ADR") by filing a Civil Stipulation and Order to ADR Form and Order. You may find this form and information regarding the Civil ADR Program online at http://sanmateocourt.org/court_divisions/adr/civil/

4. If you have filed a default or a judgment has been entered, your case may not automatically be taken off Case Management Conference Calendar if there are any parties pending, including "Does," "Roes," etc. If "Does", "Roes," etc. are named in your complaint, they must be dismissed in order to close the case. If any party is in bankruptcy, the case is stayed only as to that named party.

5. All attorneys of record and self-represented parties are required to attend this conference*

6. The Case Management judge will issue orders at the conclusion of the conference that may include:
    a) Referring parties to voluntary ADR and setting an ADR completion date;
    b) Dismissing or serving claims or parties;
    c) Setting a trial date.

7. The Case Management judge may be the trial judge in this case.

For further information regarding case management policies and procedures, see the court's website at: www.sanmateoocourt.org

* Telephonic appearances at case management conferences are available by contacting CourtCall, LLC, an independent vendor, at least five business days prior to the scheduled conference (see attached CourtCall information).

Rev. Jan. 2020

YOSEF PERETZ
PERETZ & ASSOCIATES
22 BATTERY STREET
SUITE 202
SAN FRANCISCO CA 94111

## APPROPRIATE DISPUTE RESOLUTION INFORMATION SHEET

## SUPERIOR COURT OF CALIFORNIA, SAN MATEO COUNTY

In addition to the court provided voluntary and mandatory settlement conferences, this court has established, in partnership with the community and Bar Association, the Multi-Option ADR Project. Recognizing that many civil disputes can be resolved without the time and expense of traditional civil litigation, the San Mateo County Superior Court encourages the parties in civil cases to explore and pursue the use of Appropriate Dispute Resolution

## WHAT IS APPROPRIATE DISPUTE RESOLUTION?

Appropriate Dispute Resolution (ADR) is the general term applied to a wide variety of dispute resolution processes which are alternatives to lawsuits.   Types of ADR processes include arbitration, mediation, neutral evaluation, mini-trials, settlement conferences, private judging, negotiation, and hybrids of these processes.   All ADR processes offer a partial or complete alternative to traditional court litigation for resolving disputes.

## WHAT ARE THE ADVANTAGES OF USING ADR?

ADR can have a number of advantages over traditional court litigation.

- **ADR can save time**.  Even in a complex case, a dispute can be resolved through ADR in a matter of months or weeks, while a lawsuit can take years.

- **ADR can save money.**  By producing earlier settlements, ADR can save parties and courts money that might otherwise be spent on litigation costs (attorney's fees and court expenses).

- **ADR provides more participation.**  Parties have more opportunity with ADR to express their own interests and concerns, while litigation focuses exclusively on the parties' legal rights and responsibilities.

- **ADR provides more control and flexibility.**  Parties can choose the ADR process most appropriate for their particular situation and that will best serve their particular needs.

- **ADR can reduce stress and provide greater satisfaction.**  ADR encourages cooperation and communication, while discouraging the adversarial atmosphere found in litigation.  Surveys of disputants who have gone through ADR have found that satisfaction with ADR is generally high, especially among those with extensive ADR experience.

### Arbitration, Mediation, and Neutral Evaluation

Although there are many different types of ADR processes, the forms most commonly used to resolve disputes in California State courts are Arbitration, Mediation and Neutral Evaluation.   The Multi-Option ADR Project a partnership of the Court, Bar and Community offers pre-screened panelists with specialized experience and training in each of these areas.

**Arbitration:** An arbitrator hears evidence presented by the parties, makes legal rulings, determines facts and makes an arbitration award.  Arbitration awards may be entered as

Form ADR-CV-8 "Court ADR Information Sheet ADR-CV-8" [Rev. Feb. 2014]

judgments in accordance with the agreement of the parties or, where there is no agreement, in accordance with California statutes. Arbitrations can be binding or non-binding, as agreed by the parties in writing.

**Mediation:** Mediation is a voluntary, informal, confidential process in which the mediator, a neutral third party, facilitates settlement negotiations. The mediator improves communication by and among the parties, helps parties clarify facts, identify legal issues, explore options and arrive at a mutually acceptable resolution of the dispute.

**Neutral Evaluation:** Involves presentations to a neutral third party with subject matter expertise who may render an opinion about the case the strengths and weaknesses of the positions, the potential verdict regarding liability, and a possible range for damages.

## CIVIL ADR PROCEDURES FOR THE SAN MATEO COUNTY SUPERIOR COURT

- Upon filing a Complaint, the Plaintiff will receive this **information sheet** from the Superior Court Clerk. Plaintiff is expected to include this information sheet when he or she **serves the Complaint** on the Defendant.

- All parties to the dispute may voluntarily agree to take the matter to an ADR process. A stipulation is provided here. Parties chose and contact their own ADR provider. A Panelist List is available online.

- If the parties have not agreed to use an ADR process, an initial Case Management Conference ("CMC") will be scheduled within 120 days of the filing of the Complaint. An **original and copy of the Case Management Conference Statement must be completed and provided to the court clerk no later than 15 days prior to the scheduled conference**. The San Mateo County Superior Court Case Management Judges will strongly encourage all parties and their counsel to consider and utilize ADR procedures and/or to meet with the ADR director and staff where appropriate.

- If the parties voluntarily agree to ADR, the parties will be required to sign and file a **Stipulation and Order to ADR.**

- A timely filing of a stipulation (at least 10 days prior to the CMC) will cause a notice to vacate the CMC. ADR stipulated cases (other than judicial arbitration) will be continued for further ADR/Case Management status review in 90 days. If the case is resolved through ADR, the status review date may be vacated if the court receives a dismissal or judgment. The court may upon review of case information suggest to parties an ADR referral to discuss matters related to case management, discovery and ADR.

- Any ADR Services shall be paid for by the parties pursuant to a separate ADR fee agreement. The ADR Director may screen appropriate cases for financial aid where a party is indigent.

- Local Court Rules require your cooperation in evaluating the ADR Project and will expect a brief evaluation form to be completed and submitted **within 10 days of completion of the process.**

You can find ADR forms on the ADR webpage: www.sanmateocourt.org/adr. For more information contact the Multi-Option ADR Project at (650) 261-5075 or 261-5076.